April 18, 1979

## 79-26    MEMORANDUM OPINION FOR THE ASSOCIATE ATTORNEY GENERAL

### Immigration and Nationality Act (8 U.S.C. § 1101 (a)(15))—Nonimmigrant Aliens—Strikes and Other Labor Disputes—Status of Nonimmigrant Alien Soccer Players During Strike in the North American Soccer League

This responds to the oral request for our views whether nonimmigrant aliens currently employed by teams in the North American Soccer League (NASL) may lawfully continue to work in the United States notwithstanding a strike called by the North American Soccer League Players Association, and whether the nonimmigrant aliens who continue to work and those who choose not to do so may lawfully remain in the United States. We conclude that the Immigration and Nationality Act and applicable regulations of the Immigration and Naturalization Service (INS) neither bar this class of alien workers from continuing to work nor require their deportation if they honor or refuse to honor the strike.

Under the Immigration and Nationality Act, the term "immigrant" means every alien except an alien who falls within one of a number of specific classes of nonimmigrants set forth in 8 U.S.C. § 1101(a)(15). Included among the classes of nonimmigrants are the so-called "H-1" and "H-2" aliens:

> (H) an alien having a residence in a foreign country which he has no intention of abandoning (i) who is of distinguished merit and ability and who is coming temporarily to the United States to perform services of an exceptional nature requiring such merit and ability * * *; or (ii) who is coming temporarily to the United States to perform temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country * * *. [8 U.S.C. § 1101(a)(15)(H).]

The Act provides that the "question of importing any alien as a nonimmigrant under § 1101(a)(15)(H) * * * shall be determined by the

Attorney General, after consultation with appropriate agencies of the Government, upon petition of the importing employer." 8 U.S.C. § 1184(c). We understand that INS, after consulting with the Secretary of Labor, approved petitions filed by the NASL to admit 210 nonimmigrant aliens under 8 U.S.C. § 1101(a)(15)(H)(ii) (H-2 aliens). We also understand that a few players of distinguished merit and ability may have been admitted pursuant to 8 U.S.C. § 1101(a)(15)(H)(i)(H-1 aliens).

When an employer's petition has been approved, the alien beneficiary may be admitted into the United States to work for the employer. The authorized period of his admission is governed by the period of established need for his services, not to exceed the period for which the employer's petition is valid. 8 CFR 214.2(h)(9). The petitions in the present situation are, as we understand it, valid through the current NASL season. However, 8 CFR 214.2(h)(10) provides:

> A petition shall be denied if a strike or other labor dispute involving a work stoppage or layoff of employees is in progress in the occupation and at the place the beneficiary is to be employed or trained; if the petition has already been approved, the approval of the beneficiary's employment or training is automatically suspended while such strike or other labor dispute is in progress.

Because the NASL's petitions have already been approved for the duration of the NASL season, the question is whether the approval of employment for each nonimmigrant alien player already employed by an NASL team is "automatically suspended" while the present strike is in progress. We do not believe the regulation may be interpreted in this manner.

The regulation, promulgated in 1965, was apparently issued pursuant to 8 U.S.C. § 1184(a), which provides that the admission of an alien as a nonimmigrant "shall be for such time and under such conditions as the Attorney General may by regulations prescribe." Such a regulation must, however, be rationally related to the purposes and ends of the Immigration and Nationality Act. *Cf., Fook Hong Mak* v. *INS*, 435 F. (2d) 728, 730 (2d Cir. 1970).

We understand that INS has no information regarding the original purpose of the regulation, and that there is no helpful history of application of the regulation. Its apparent purpose, however, is to prevent an employer involved in a labor dispute from importing nonimmigrant aliens as "strike breakers"—*i.e.,* to replace the employer's current employees who have gone on strike. Such a restriction may, in our view, be rationally related to the purposes of the Act, at least as applied to H-2 aliens. H-2 aliens may only be admitted "if unemployed persons capable of performing [the requested] service or labor cannot be found in this country." It could, in general, reasonably be concluded that persons on strike are capable of performing services for the struck employer, or at least that the requisite determination could not be made while a strike is in progress, and that the statutory requirement for admitting H-2 aliens could therefore not be met when the petitioning employer's need for employees arises from

a strike. As applied to aliens whose employment would begin after commencement of the strike, 8 CFR 214.2(h)(10) merely gives particular content to the statutory requirement.

We have serious doubt, however, that the regulation may properly be interpreted to require the automatic suspension of the employment approval of nonimmigrant aliens who are already employed as beneficiaries of an approved petition filed under 8 U.S.C. §§ 1101(a)(15)(H) and 1184(c) at the time of the strike or other labor dispute. Any such aliens in the H-2 category were presumably admitted after a finding that unemployed workers capable of performing the duties could not be found in this country. The mere existence of a strike or other labor dispute does not suggest that capable unemployed workers can be found, thereby warranting suspension of approval of the alien's employment. The automatic suspension of work approval upon the occurrence of a strike or other labor dispute therefore would not be rationally related to the purposes of 8 U.S.C. § 1101(a)(15)(H)(ii). Nor have we been able to identify any other provision of the Immigration and Nationality Act to which this interpretation could be tied.

A second reason for interpreting the regulation as not barring continued employment of these classes of nonimmigrant aliens may be based on the National Labor Relations Act. Section 7 of that Act, 29 U.S.C. § 157, grants to aliens the right to decide for themselves whether they will or will not engage in concerted activities, *i.e.,* whether, among other things, they will engage in or honor a strike. If the INS regulation were interpreted to require the automatic suspension of the employment approvals for H-visa alien employees whenever a labor dispute involving their employer occurs, this class of employees would be deprived of the freedom to decide whether to engage in these protected activities. In effect, they would be required to honor the strike. We do not believe that the regulation may be interpreted in such manner, absent a firm basis of support in the Immigration and Nationality Act itself.[1] *See, Sam Andrews' Sons* v. *Mitchell,* 457 F. (2d) 745, 748–49 (9th Cir. 1972).

Similarly, we are not aware of any requirement in the Immigration and Nationality Act or of any implementing regulation that a nonimmigrant who honors a strike and therefore does not work must be deported. The duration of each beneficiary's admission into the United States is conditioned upon the need for his services, up to the length of time for which the petition is valid. 8 CFR 214.2(h)(9). As pointed out above, the NASL petitions are valid for the current NASL season. A player's going on strike does not automatically eliminate the employer's need for his services or suggest that capable unemployed workers are available in the United States. Moreover, the striking alien remains an employee of the struck

---

[1] This interpretation is consistent with the meager prior history of the application of the regulation, under which INS has apparently taken no action against aliens already employed at the time of a labor dispute.

employer within the meaning of § 2(3) of the National Labor Relations Act, 29 U.S.C. § 152(3), and automatically to institute deportation proceedings against an alien who honors a strike would interfere with the employee's rights under that Act to participate or not to participate in the strike.

LARRY A. HAMMOND
*Deputy Assistant Attorney General*
*Office of Legal Counsel*